# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

DELMA COWART,

        Plaintiff,

    v.

NAUTILUS INSURANCE COMPANY; and
AUDREY MANES,

        Defendants.

CIVIL ACTION NO.: 4:17-cv-142

## O R D E R

This declaratory judgment matter is before the Court on Defendant Nautilus Insurance Company's Motion for Summary Judgment. (Doc. 18.) The Motion has been heavily briefed and is ripe for review: Plaintiff Delma Cowart and Defendant Audrey Manes each filed a Response, (docs. 26, 27); Defendant Nautilus Insurance Company ("Nautilus") filed a Reply, (doc. 28); Plaintiff filed a Surreply, (doc. 29); and Nautilus filed a Response to the Surreply, (doc. 34). The parties' pleadings, and indeed this entire case, center on an insurance policy between Defendant Nautilus, the insurer, and Plaintiff Cowart, the insured. The parties dispute whether the policy requires Nautilus to provide Cowart a defense to a state court construction lawsuit brought against Cowart by Defendant Manes. For the reasons set forth below, the Court finds that Nautilus has no duty to defend, much less indemnify, Cowart as to Manes's claims. Thus, the Court **GRANTS** Nautilus's Motion for Summary Judgment. (Doc. 18.) Additionally, the Court **ORDERS** Plaintiff Cowart to show cause, in writing, within **fourteen (14) days** from the date of this Order why the Court should not dismiss all claims against Defendant Manes in this action.

# BACKGROUND

The following facts are not in dispute:

## I.     The Project

In 2015, Defendant Manes hired Plaintiff Cowart to construct a pool, hot tub, and deck in her backyard.  (Doc. 26-1, p. 4.)  Despite being aware that Chatham County required certain permits to be obtained for this kind of work and that the county would likely issue a "stop work" order if it discovered such work was being done without proper permits, Cowart neglected to obtain any permits before proceeding with construction.  (Id.)  He also neglected to request any of the required inspections by the county of the work as it progressed.  (Id. at p. 14.)  On August 31, 2015, after Cowart had excavated a hole for the pool, installed a steel support, poured concrete for the pool shell, poured cement steps into the pool, and installed some tiles in the pool, the Chatham County Building Safety Department issued a "Stop Work Order" due to the lack of permitting for the project and delivered the order to the work site.  (Id. at p. 7.)  At this point in time, Manes had tendered $40,000 to Cowart for the work, and the parties anticipated that she would tender an additional $20,000 to $50,000 by the time the project was completed.  (Id. at pp. 5, 7.)  The project was about 80% complete.  (Id. at p. 10.)

According to her own testimony, around the same time that the order was issued, Manes became concerned with the quality of Cowart's work on the pool.  (Id. at p. 8.)  Manes told Cowart she did not want him to do any further work on the project.  (Id. at pp. 9–10.)  She had an attorney send Cowart a letter demanding that he return the funds that she had tendered to him because, she claimed, the work he had partially performed had not been done in a "safe, good and workmanlike manner and [was] defective," and because he had failed to obtain a permit prior to beginning the work.  (Id. at p. 11.)  The letter outlined the specific types of defects, in addition to the lack of

permitting, that Manes contended existed with regard to the pool.  (Id. at p. 12.)  These defects included insufficient thickness and composition of the shell of the pool, improper bonding of the pool, insufficient drainage for the pool, improperly installed lighting in the pool, and crooked and unsafe steps.  (Doc. 26-1, p. 12.)

## II.     Relevant Terms of the Insurance Policy

At the time he performed the pool construction work for Defendant Manes, Plaintiff Cowart, d/b/a Structures Unlimited, was insured by Nautilus policy number NN524632 (hereinafter the "Policy").  The Insuring Agreement of the Policy provides, in relevant part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Doc. 18-5, p. 12.)

The Policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Id. at pp. 25–26.)  The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Id. at p. 25.)

The Policy also contains exclusions that Nautilus seeks to rely upon in its Motion for Summary Judgment.  Specifically, pursuant to exclusion (j), there is no coverage for "property damage" to:

. . . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

(Id. at pp. 15–16.)

The Policy defines "your work" as, among other things, "[w]ork or operations performed by [the insured] or on [the insured's] behalf." (Id. at p. 26). The "products-completed operations hazard" includes "'property damage' occurring away from premises [the insured] own[s] or rent[s] and arising out of . . . '[the insured's] work' except . . . [w]ork that has not yet been completed or abandoned." (Id. at p. 25.)

## III.    Pre-Litigation Demands

Cowart forwarded Manes's demand letter to Defendant Nautilus.  (Doc. 26-1, p. 22.) Nautilus thereafter sent Manes's counsel a letter stating that it had "concluded its investigation" and had determined there was no coverage for Manes's claim.  (Id.; doc. 21-2, pp. 70–71.)  Manes later sent Nautilus a letter reiterating her position that Cowart's failure to obtain permits and inspections required by the county constituted improper and defective work for which she was entitled to relief.  (Doc. 21-1, pp. 50–51; doc. 26-1, p. 22.)  She also advised Nautilus that "the County [would] not allow further work to be completed on the pool or the pool to be used without a certification from a licensed engineer confirming that the reinforcement and other components of the pool [had] been tested and are sufficient and properly installed."  (Doc. 21-1, p. 51.)  She noted that the engineer she had retained to evaluate the pool was "unwilling to provide any certification concerning the pool" and that he believed it was impossible to verify the

reinforcement details of the pool.  (Id.)  In response, Nautilus again denied that the Policy provided any coverage for the claim.  (Doc. 26-1, p. 23.)

## IV.    Manes's Lawsuit against Cowart

Defendant Manes then filed suit against Plaintiff Cowart in the Superior Court of Chatham County, Georgia.  See Audrey Manes v. Delma Cowart, Individually and d/b/a Structures Unlimited, SPCV16-0077-BA (complaint filed January 13, 2016) (hereinafter "the Manes lawsuit").[1]  In the Manes lawsuit, Manes alleges that she contracted with Cowart to install a pool, hot tub, and deck in her backyard; that, per the contract between them, the work was to be completed in a "reasonable, safe, good and workmanlike manner, in accordance with sound construction practices and industry standards"; and that Cowart was "to adhere to, and comply with, all applicable regulatory, building code, permitting and inspection requirements."  (Doc. 18-8, pp. 3–5.)  The Manes complaint alleges that Cowart, however, "commenced the [work] without applying for and obtaining necessary authorization and permitting from the applicable governing authority and without participating in a series of inspections mandated by the Chatham County Building Safety Department," and, as a result, before the work was completed, "a 'STOP WORK' Order . . . was placed upon [Manes's property] and the [p]roject . . . by the Chatham County Building Safety Department."  (Id. at p. 4.)  The Manes complaint specifically points out that Cowart failed to arrange an inspection that was required prior to concrete being installed in the pool.  (Id.)  The Manes complaint also alleges that, following the stop work order, the County has refused to allow further construction to occur in connection with the project and, "the existing structure must be demolished and removed from the [p]roperty, resulting in significant expense to [Manes]."  (Id.)

---

[1]  Plaintiff Cowart attached a copy of the Manes complaint as Exhibit A to his Complaint initiating this declaratory judgment action.  (Doc. 1-2, pp. 5, 13–20.)

The <u>Manes</u> complaint alleges that Manes is entitled to damages because "the partial work that has been performed by [Cowart] to date is defective, has not been completed in a reasonable, safe, good and workmanlike manner, in accordance with sound construction practices and industry standards, and was performed illegally and without [Cowart's] compliance with all applicable regulatory, building code, permitting and inspection requirements." (<u>Id.</u>) She also alleges that Cowart has wrongfully refused to return to her the money that she had already paid him in connection with the project. (<u>Id.</u> at p. 5.)

In Count I of the <u>Manes</u> complaint, Manes purports to assert a claim for "Negligence and Negligence Per Se," based on the allegation that Cowart breached his duty to perform the work in "a reasonable, safe, good and workmanlike manner, in accordance with sound construction practices and industry standards, and to adhere to, and comply with, all applicable regulatory, building code, permitting and inspection requirements." (<u>Id.</u> at pp. 5–7.) Manes also alleges negligence based on Cowart's related duties to hire, retain, and supervise others performing work on his behalf to ensure that they performed the work in the afore-described manner. (<u>Id.</u>) She alleges that, because of Cowart's negligence, she has sustained and will continue to sustain damages. (<u>Id.</u> at p. 7.)

In Count II, Manes asserts a claim for "Breach of Contract," based on the allegation that the same duty enumerated in Count I—regarding the standards for Cowart's work on the project—was also a term of the parties' contract for the work, and that Cowart breached that duty and thereby breached the contract. (<u>Id.</u>) She alleges that, as a result, she has sustained and will continue to sustain damages, that the defects in the work performed are "irremediable," and that the value of her property has been diminished as a result of the breach of contract. (<u>Id.</u> at p. 8.)

In Count III, Manes asserts a claim for money had and received, wherein she seeks to require Cowart to return the funds she had previously tendered in connection with the pool project due to the above-described alleged defects. Finally, in Count IV, she seeks attorney's fees for Cowart's alleged bad faith and stubborn litigiousness. (Id. at pp. 8–9.)

## V.      This Lawsuit

After being served with Manes's complaint, Cowart tendered his defense to Nautilus via a letter from his legal counsel. (Doc. 26-1, p. 23.) According to Cowart, Nautilus refused to defend or indemnify him with regard to the claims, so he was forced to retain counsel to file an answer on his behalf. (Id.)

Following Nautilus's refusal to defend him in the Manes lawsuit, Plaintiff Cowart filed the present lawsuit in the Superior Court of Chatham County, Georgia. (Doc. 1-2.) In Count I, Plaintiff seeks a declaratory judgment by the Court regarding "whether . . . there is insurance coverage owed to him" by Nautilus, including specifically whether Nautilus "has an obligation to defend him." (Id. at p. 7.) In Count II, he asserts a claim for breach of contract by Nautilus, based on the allegation that Nautilus breached its obligation under the Policy by refusing to defend him in the Manes lawsuit. (Id. at p. 8.) Finally, in Count III, which is entitled "Bad Faith and Attorney's Fee [sic]," he alleges very generally that Nautilus's refusal to defend and indemnify him constitutes bad faith, has caused him unnecessary trouble and expense, and shows stubborn litigiousness. (Id.) Nautilus removed the case to this Court on July 28, 2017. (Doc. 1.)

Presently before the Court is Nautilus's Motion for Summary Judgment as to all of Cowart's claims against it.[2] (Doc. 18.)

---

[2] Although she is a named Defendant in the case, Manes has not filed any sort of motion. She, however, filed a Response to Nautilus's Motion for Summary Judgment, in which she states that she "joins in the legal arguments asserted by Cowart in response to the Motion for Summary Judgment." (Doc. 27, p. 1.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving

party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Id.</u> (emphasis and citation omitted).

## DISCUSSION

Defendant Nautilus moves for summary judgment as to both the request for declaratory judgment in Count I and the breach of contract claim in Count II because, it contends, Manes's claims against Cowart do not constitute claims for "property damage" as defined by the Policy and are therefore not covered by it. (Doc. 18, pp. 3–10, 15–16.) In the alternative, Nautilus argues, even if the claims qualify as claims for "property damage," coverage is nonetheless excluded by one or more exclusion provisions in the Policy. (<u>Id.</u> at pp. 10–15.) For the reasons explained below, the Court finds Nautilus's Motion for Summary Judgment is due to be granted as to these counts.

Under Georgia law, "[t]he construction of an insurance contract is a question of law for the court." <u>Selective Way Ins. Co. v. Litig. Tech., Inc.</u>, 606 S.E.2d 68, 70 (Ga. Ct. App. 2004) (quoting <u>Hirschfield v. Cont'l Cas. Co.</u>, 405 S.E.2d 737, 738 (Ga. Ct. App. 1991)). "An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." <u>Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.</u>, 746 S.E.2d 587, 590 (Ga. 2013) (quoting <u>Hunnicutt v. S. Farm Bureau Life Ins. Co.</u>, 351 S.E.2d 638, 640 (Ga. 1987)); <u>see generally</u> O.C.G.A. § 13-2-2 (providing rules of contract interpretation). Therefore, "parties to an insurance policy are bound by its plain and unambiguous terms." <u>Richards v. Hanover Ins. Co.</u>, 299 S.E.2d 561, 563 (Ga. 1983) (citation omitted). The "words in an insurance contract must be given their usual, ordinary, and common meaning." <u>Bold Corp. v. Nat'l Union Fire Ins. Co.</u>, 454 S.E.2d 582,

584 (Ga. Ct. App. 1995) (citing O.C.G.A. § 13-2-2(2) ("Words generally bear their usual and common signification . . . .")). In construing an insurance policy, "a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other." S. Trust Ins. Co. v. Dr. T's Nature Prods. Co., 584 S.E.2d 34, 35 (Ga. Ct. App. 2003) (citing Boardman Petroleum v. Federated Mut. Ins. Co., 498 S.E.2d 492, 494 (Ga. 1998)).

## I.     Insurer's Duty to Defend and Indemnify

In Count I, Cowart seeks a declaratory judgment by the Court regarding "whether . . . there is insurance coverage owed to him" by Nautilus, including specifically whether Nautilus "has an obligation to defend him." (Doc. 1-2, p. 7). Under Georgia law, the duty to defend and the duty to indemnify are treated separately. "[A]n insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract . . . ." Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing Penn-America Ins. Co. v. McKemie, 490 S.E.2d 374, 376 (Ga. 1997)). "Given that a determination of liability is central to this question, federal courts often find that an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit." Capitol Specialty Ins. Corp. v. PTAV, Inc., 331 F. Supp. 3d 1329, 1333–34 (N.D. Ga. 2018) (citation and quotations omitted); see also Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc., 651 F.Supp.2d 1367, 1372–74 (N.D. Ga. 2009) (collecting cases). However, the duty to indemnify may be ripe for adjudication where, as here, a court finds no duty to defend, and "'logic and common sense' make clear that the duty to indemnify would be governed by the same facts and contractual provisions." Capitol Specialty Ins. Corp., 331 F. Supp. 3d at 1334 (quoting Western Heritage Ins. Co. v. River Entm't, 998 F.2d 311, 315 (5th Cir. 1993)).

An insurer's duty to defend is broader than the duty to indemnify. <u>Shafe v. Am. States Ins. Co.</u>, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007). "[A]n insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." <u>Elan Pharm. Research Corp.</u>, 144 F.3d at 1375 (applying Georgia law). An insurer is not required, however, to defend against allegations that are expressly excluded under the policy. <u>Dillard House, Inc.</u>, 651 F.Supp.2d at 1372 (citing <u>Bituminous Cas. Corp. v. N. Ins. Co. of N.Y.</u>, 548 S.E.2d 495, 498 (Ga. Ct. App. 2001)).

Generally speaking, an insurer's duty to defend is determined by "compar[ing] the allegations of the underlying complaint against the provisions of the policy." <u>Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, LLC</u>, 592 Fed. Appx. 876, 882 (11th Cir. 2015) (citing <u>Nationwide Mut. Fire Ins. Co. v. Somers</u>, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003)). "A different rule, however, applies when the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage." <u>Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671</u>, 491 S.E.2d 337, 338 (Ga. 1997). "[I]f the complaint fails to allege facts that bring the claim within policy coverage, a duty to defend may nevertheless exist where the insured informs the insurer of additional facts related to the claim that would entitle him to a defense of the same under the policy." <u>Shafe</u>, 653 S.E.2d at 874 (emphasis and citation omitted).

If neither the complaint nor any additional factual contentions presented to the insurer present a claim that is covered, "the insurer is justified in refusing to provide the insured a defense." <u>HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.</u>, 701 F.3d 662, 666 (11th Cir. 2012) (citing <u>Forster v. State Farm Fire & Cas. Co.</u>, 704 S.E.2d 204, 205–06 (Ga. Ct. App. 2010)). "This principle is 'especially' true with respect to exclusions from coverage sought to be invoked by the

insurer." <u>Dillard House</u>, 651 F.Supp.2d at 1376 (citation omitted). Any doubt as to the insurer's duty to defend, however, should be resolved in favor of the insured. <u>JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.</u>, 717 S.E.2d 219, 223 (Ga. Ct. App. 2011).

Here, the evidence presented by the parties indicates that Nautilus was made aware of certain limited factual contentions beyond what Manes included in her complaint in the underlying action. Specifically, Manes's initial demand letter, which Cowart forwarded to Nautilus, asserted that Cowart's work was defective not only because of the lack of permits and inspections but also because of perceived issues with the actual workmanship, such as insufficient thickness and composition of the shell of the pool, improper bonding of the pool, insufficient drainage for the pool, improperly installed lighting in the pool and crooked and unsafe steps. As a result, in addressing this Motion for Summary Judgment, the Court considers not only the allegations in Manes's Superior Court complaint but also the assertions contained in her pre-litigation correspondence to which Nautilus was privy.[3]

## II. Declaratory Judgment (Count I) and Breach of Contract (Count II)

### A. Manes Does Not Seek Recovery from Cowart for "Property Damage" Covered by the Policy

Nautilus first argues that it is not obligated to provide a defense to Cowart because the Manes lawsuit does not seek damages that qualify as "property damage" as that term is defined in the Policy. (Doc. 18, pp. 4–10.) Specifically, because Manes has alleged only defects concerning the workmanship and construction of the pool that she hired Cowart to build, rather than damage

---

[3] No party has argued that Nautilus was presented with information that should have prompted it to conduct a more thorough investigation in reaching its coverage determination. <u>See</u> <u>Lawyers Title Ins. Corp. v. Stribling</u>, 670 S.E.2d 154, 157 (Ga. Ct. App. 2008) ("If the complaint in an underlying lawsuit shows that there is no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage, . . . the insurer has an obligation to give due consideration to its insured's factual contentions and to . . . conduct a reasonable investigation into its insured's contentions."); <u>see also</u> <u>Anderson v. So. Guar. Ins. Co.</u>, 508 S.E.2d 726, 730 (Ga. Ct. App. 1998) (discussing duty to investigate).

to some other separate property, Nautilus contends it is not required to defend Cowart on these claims per the Policy. (Id.) The Court agrees that the claims against Cowart are not for "property damage" as defined by the Policy.

The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of the property" or "[l]oss of use of tangible property that is not physically injured." (Doc. 18-5, pp. 25–26.) It is well-settled in Georgia that the "property damage" requirement in policies such as the one at issue here "limit[s] coverage in faulty workmanship cases to instances in which the faulty workmanship has damaged *other*, *nondefective* property or work"; that is, "damage beyond mere faulty workmanship" on the work the insured was hired to perform. Taylor Morrison Servs., 746 S.E.2d at 591 (emphasis added). In Taylor Morrison Services v. HDI-Gerling American Insurance Co., the Supreme Court of Georgia explained that "[p]roperty or work that is inherently defective because it was produced by faulty workmanship cannot be said to have been 'physically injured' by the very faulty workmanship that brought it into being in the first place." Id. at 591 n.10 (citing, e.g., Crossman Communities of N.C. v. Harleysville Mut. Ins. Co., 717 S.E.2d 589, 593 (S.C. 2011) and quoting its holding that "a claim for the costs of repairing or removing defective work . . . is not a claim for 'property damage'"); see also Mass. Bay Ins. Co. v. Sunbelt Directional Drilling, Inc., No. Civil Action No. 1:07–CV–0408–JOF, 2008 WL 8167708 at *3 (N.D. Ga. Feb. 14, 2008) (A contractor's standard CGL policy is "not intended to protect a contractor from economic loss when a product or completed work is not to the customer's satisfaction or when a contractor must repair or replace an element of his own work which has been damaged in order to comply with his contractual obligations to the customer."). Thus, Manes's claims that Cowart's performance of the pool project resulted in a defective and unusable pool are not claims for "property damage" covered by the Policy.

Cowart attempts to distinguish Manes's allegations against him from this well-settled principle by arguing that "in this particular case the property damage did not result from defective or faulty workmanship of the defendant but rather from Cowart's alleged negligence in failing to obtain a construction permit." (Doc. 26, p. 4.) First, this attempt to exclude the duty to obtain permits and secure inspections required by law from the scope of a contractor's "work" or "workmanship" defies logic, particularly where, as here, those actions are prerequisites to the project's successful completion. Moreover, this is a distinction without a difference, as the controlling factor is whether the <u>Manes</u> complaint (or any of Manes's correspondence reviewed by Nautilus) alleged or implied that Cowart's partial performance of the pool project caused damage to, or loss of use of, property unrelated to the pool project itself.[4] There being no evidence of any such allegation in the record, Manes's claims are not covered by the Policy. <u>See, e.g.</u>, <u>Allstate Ins. Co. v. Luu</u>, Civ. No. 1:17-cv-312-TWT, 2017 WL 5573025, at *2 (N.D. Ga. Nov. 17, 2017) (holding that allegations "that the Contractors' supposed negligence and incompetence were the cause of the defects in [claimant's] home" were considered "claims that [arose] as a result of faulty workmanship" and thus did not qualify as "property damage" covered by the policy).

Based on the foregoing, the Court finds that Manes does not allege claims for any harm to property qualifying as "property damage" pursuant to the Policy. Thus, Nautilus has no duty to defend or indemnify Cowart in the Manes lawsuit.

### B. Two "Business Risk" Exclusions Apply and Exclude Manes's Claims from Coverage

Nautilus urges that even if Manes can be found to have alleged a claim for something qualifying as "property damage" covered by the Policy, the Policy's "business risk exclusions"

---

[4] Manes has not alleged injury to any person.

require the Court to hold that Nautilus is not bound to defend Cowart against Manes's claims. (Doc. 18, pp. 10–15.) The Court agrees.

"Business risk exclusion" provisions "are designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project itself." QBE Ins. Co. v. Couch Pipeline & Grading, Inc., 692 S.E.2d 795, 797–78 (Ga. Ct. App. 2010) (quoting SawHorse, Inc. v. S. Guar. Ins. Co., 604 S.E.2d 541, 544 (Ga. Ct. App. 2004)); see also Taylor Morrison Servs., 746 S.E.2d at 592 ("'[B]usiness risk' exclusions of a CGL policy . . . may serve to exclude liabilities for the repair or correction of defective work from the scope of coverage."). As the Georgia Court of Appeals has explained:

> There are two kinds of risks that are incurred by a contractor. The first is the business risk borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered by the [insurance] policy, and the business risk exclusions in the policy make this clear. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which . . . commercial general liability coverage is contemplated. . . . The risk intended to be insured is the possibility that the . . . work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the . . . completed work itself, and for which the insured may be found liable.

SawHorse, Inc., 604 S.E.2d at 544 (ellipses in original) (footnote omitted) (quoting Sapp v. State Farm Fire & Cas. Co., 486 S.E.2d 71, 74–75 (Ga. Ct. App. 1997)); see also Auto Owners Ins. Co. v. Gay Constr. Co., 774 S.E.2d 798, 800 (Ga. Ct. App. 2015) (When an insurance contract contains broadly-worded business risk exclusions, a court must ask "itself, 'Will the payment of insurance proceeds effectively cause an insurance company to guarantee the contractor's work?' If the answer is yes, the business-risk exclusions apply and the claim is denied.").

Under Georgia law, an insurer has the burden to prove that an exclusion to coverage applies. See, e.g., Dolan v. Auto Owners Ins. Co., 773 S.E.2d 789, 792 (Ga. Ct. App. 2015). Exclusions invoked by an insurer are "'narrowly and strictly construed against the insurer and

[forgivingly] construed in favor of the insured to afford coverage.'" Liberty Surplus Ins. Corp. v. Norfolk S. Ry. Co., 684 Fed. Appx. 788, 791 (11th Cir. 2017) (alteration in original) (quoting Auto-Owners Ins. Co. v. Neisler, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015)). "If a policy exclusion is unambiguous, however, it must be given effect even if beneficial to the insurer and detrimental to the insured." Kovacs v. Cornerstone Nat'l Ins. Co., 736 S.E.2d 105, 107 (Ga. Ct. App. 2012) (citation omitted).

The relevant provisions here are found at subsection (j) of the Policy, which provides, in relevant part, that "[t]his insurance does not apply to . . . '[p]roperty damage' to . . . (5) [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or (6) [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Doc. 18-5, pp. 13, 15–16). According to the Policy, "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'" (Id.) The "products-completed operations hazard" includes "'property damage' occurring away from premises [Cowart] own[s] or rent[s] and arising out of . . . '[Cowart's] work' *except* . . . [w]ork that has not yet been completed or abandoned." (Id. at p. 25 (emphasis added).) Cowart apparently concedes that the "products-completed operations hazard" is not applicable here. (See Doc. 26, pp. 7–8; doc. 29, p. 3; see also doc. 28, p. 6 n.2.) As a result, the Court need not analyze whether this provision interferes with the applicability of the (j)(6) exclusion.

As described in greater detail in the "Background" section of this Order, Manes's complaint alleges that she is entitled to damages because Cowart failed to obtain necessary authorization and permitting and failed to participate in a series of inspections mandated by the

county, and because, as a result, the county has prohibited her from using the pool and she must have it removed. Manes's pre-litigation demand letters, to which Nautilus was privy, additionally alleged that Manes is entitled to damages because Cowart's work on the project resulted in other types of defects, such as an insufficient thickness and composition of the shell of the pool, improper bonding of the pool, insufficient drainage for the pool, improperly installed lighting in the pool, and crooked and unsafe steps. These are all shortcomings that indisputably "arise[] out of" Cowart's "operations" on the project, triggering the (j)(5) exclusion provision. Manes has not alleged or implied that Cowart's work on the pool project caused damage to persons or property unrelated to the project. Moreover, the requested and foreseeable damages associated with such defects—the costs associated with the necessary demolition and replacement of the pool—are also clearly excluded from coverage under the (j)(6) exclusion provision.[5] Accordingly, because none of Manes's allegations have even arguably implicated damages beyond those arising out of, or necessary to remediate, the issues with the pool, the (j)(5) and (j)(6) exclusions apply and Nautilus has no duty to defend Cowart in the <u>Manes</u> lawsuit.

### C. <u>Glens Falls Insurance Co. v. Donmac Golf Shaping Co.</u> Does Not Require a Different Result

Cowart relies heavily on the case <u>Glens Falls Insurance Co. v. Donmac Golf Shaping Co.</u>, 417 S.E.2d 197 (Ga. Ct. App. 1992), in an effort to persuade the Court that his negligence in failing to obtain a permit is covered by the Policy. (<u>See</u> Doc. 26, pp. 6–8; doc. 29, pp. 2–4.) In <u>Glens</u>

---

[5] Cowart emphasizes that Manes also claims she has suffered diminution in the value of her property as a result of the presence of the defective pool. (Doc. 18-8, p.8.) This allegation does not trigger coverage, however, since diminution in a property's value resulting from the faulty performance of work does not constitute property damage. <u>See, e.g.</u>, <u>Scottsdale Ins. Co. v. Pursley</u>, 487 Fed. Appx. 508, 511 (11th Cir. 2012) (per curiam) (a diminished value claim is not cognizable "property damage" under a policy that defines that term as "[p]hysical injury to tangible property, including all resulting loss of use of that property. . . . or [l]oss of use of tangible property that is not physically injured"); <u>see also</u> <u>Nationwide Mut. Ins. Co. v. Bader & Assocs., Inc.</u>, No. 2:13-CV-00032–RWS, 2014 WL 231980, at *4 (N.D. Ga. Jan. 22, 2014).

Falls, the insured was a contractor that had been hired by a developer to construct a golf course. 417 S.E.2d at 198. After completion of the construction, the developer was informed that substantial areas of the course were built on federally-protected wetlands and, since no permits had been obtained, the developer was in violation of federal laws protecting wetlands. Id. The developer was required to perform various remediation and mitigation activities, including restoring some of the affected wetlands at the site of the project and creating other wetland areas away from the site of the project. Id. The developer sued the contractor, claiming the contractor negligently failed to exercise the ordinary care required of contractors under like circumstances by constructing the project in the wetland areas without obtaining the necessary permits and in violation of federal law. Id. Notably, the developer sought recovery for "expenses of restoration and preservation of damaged wetlands at the project site, purchase and restoration of off-site wetland areas, elimination of certain encroaching areas of the project, and the resulting diminution in fair market value of the property." Id. at 201. In holding that the insurer was obligated to defend the contractor in the developer's suit, the Georgia Court of Appeals emphasized that the developer was seeking "recovery for damages over and above the scope of the benefits it contracted for with [the contractor]." Id.

In a later case, the Georgia Court of Appeals further explained that "the damages sought by the developer against [the contractor in Glens Falls] were not directly related to the cost of repairing or replacing deficiencies in [the contractor's] work on the project—which would be excluded from the insurance coverage as business risks—but were claims beyond the scope of the contractual expectations for additional tort damages caused by the alleged deficiencies in [the contractor's] performance." QBE Ins. Co., 692 S.E.2d at 798. That is, the suit against the

18

contractor did not simply seek damages for problems with the golf course itself that prevented the golf course from being functional.

Here, in contrast, Manes only seeks damages that relate directly to removing and replacing the pool, which was defective due to Cowart's failures and alleged deficiencies in performing the project. "This liability . . . is not what the coverage[] in question [is] designed to protect against." Glens Falls, 417 S.E.2d. at 200.

### D. Nautilus is Entitled to Summary Judgment on Counts I and II.

In light of all the foregoing, Manes's claims against Cowart are not covered by the Policy and, even if they were technically covered, they are nonetheless excluded from coverage by one or both of the exclusions discussed above. As a result, Cowart is not entitled to a declaration that Nautilus is obligated to defend and indemnify him with respect to Manes's claims against him arising out of the pool project. Likewise, Cowart cannot support his claim that Nautilus has breached its contract of insurance with him by refusing to defend or indemnify him. Accordingly, the Court **GRANTS** Defendant Nautilus's Motion for Summary Judgment as to Counts I and II of Cowart's Complaint (Declaratory Judgment and Breach of Contract).

## III. Bad Faith and Attorney's Fees (Count III)

In Count III, which is entitled "Bad Faith and Attorney's Fee [sic]," Cowart alleges very generally that Nautilus's refusal to defend and indemnify him constitutes bad faith, has caused him unnecessary trouble and expense, and shows stubborn litigiousness, entitling him to attorney's fees and expenses of litigation. (Doc. 1-2, p. 8.) The Complaint does not indicate the specific law upon which this claim is based. The language used in Count III, however, mirrors the language of O.C.G.A. § 13-6-11, which provides that while "[t]he expenses of litigation generally shall not be allowed as a part of the damages[,] . . . where the plaintiff has specially pleaded and has made

prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." In his Response in Opposition to Summary Judgment, however, Cowart indicates a reliance upon O.C.G.A. § 33-4-6, which provides a basis for an insured to hold its insurer liable for both damages and attorney's fees due to the insurer's bad faith in refusing to pay a claim.

Regardless of what statute or other legal basis Cowart intended to use to recover attorney's fees, the Court's determination, above, that Nautilus is not obligated to defend or indemnify Cowart precludes any finding of bad faith, stubborn litigiousness or unnecessary trouble and expense, which is necessary for such recovery. See Wilson v. Int'l Bus. Machs. Corp., 610 Fed. Appx. 886, 890 (11th Cir. 2015) ("A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim." (quoting United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601, 602 (Ga. 1996))); OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah, 477 Fed. Appx. 665, 673 (11th Cir. 2012) ("Under Georgia law, there can be no recovery for bad faith when there is no coverage." (citing Morris v. Ins. Co. of N. Am., 151 S.E.2d 813, 814 (Ga. Ct. App. 1966))); BayRock Mortg. Corp. v. Chicago Title Ins. Co., 648 S.E.2d 433, 435 (Ga. Ct. App. 2007) (requiring that the insured prove "that the claim is covered under the policy" to prevail on a bad-faith claim under O.C.G.A. § 33-4-6); see also Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., 609 Fed. Appx. 578, 596–97 (11th Cir. 2015). Accordingly, the Court **GRANTS** Nautilus's Motion for Summary Judgment as to Cowart's claim in Count III for a finding of bad faith and the award of attorney's fees.

## IV.    Manes's Status as a Defendant

As noted above, Defendant Manes has not filed any sort of dispositive motion in this case, which comes as no surprise since none of Cowart's claims in his Complaint seek relief from her

and since her interests in this litigation are aligned with Cowart's (so much so that her Response to her co-defendant's Motion for Summary Judgment "join[ed] in the legal arguments asserted by Cowart" in opposition to the Motion, (doc. 27)). The allegations and requests for relief contained within Counts II and III (breach of contract and bad faith and attorney's fees) do not concern any conduct on Manes's part. (See Doc. 1-2, p. 8.) The sole claim in the Complaint that even arguably concerns Manes is Count I ("Declaratory Judgment"), simply because it seeks a declaration regarding whether Nautilus is obligated to defend Cowart in Manes's lawsuit. Notably, however, Cowart's Complaint seeks no declaration regarding any rights that might be held by or obligations that might be owed to Manes. Since the entry of summary judgment against Cowart in this Order appears to leave no colorable case or controversy between Cowart and Manes before this Court, the Court hereby gives notice that it intends to dismiss, *sua sponte*, Cowart's Complaint with regard to Manes for failure to state a claim against her.[6] Cowart has fourteen days from the date this Order is entered to show cause in writing why Manes is not due to be dismissed.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Nautilus Insurance Company's Motion for Summary Judgment. (Doc. 18.) Nautilus is **DISMISSED** from this action. The Clerk, however, shall withhold the entry of judgment granting summary judgment in favor of Nautilus and against Plaintiff until the conclusion of the case as the case otherwise remains pending against Audrey Manes. In that regard, however, the Court **HEREBY ORDERS** Plaintiff Delma Cowart to show cause, in writing, within **fourteen (14) days** from the date of this Order why the Court should not dismiss all claims against Manes in this action. Should Plaintiff fail to timely respond

---

[6] With summary judgment entered herein in favor of Nautilus on all three counts, the dismissal of Manes would trigger a final judgment in the case.

and establish such good cause, the Court will *sua sponte* dismiss Defendant Manes without prejudice and enter final judgment in the case.

      **SO ORDERED**, this 17th day of January, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA